# UNITED STATES DISTRICT COURT
for the
Western District of Texas

| | |
|---|---|
| THEODIS McGEE, individually and as next friend of L.M., a minor, *Plaintiffs,*<br><br>  **-v-**<br><br>PLEASANTON INDEPENDENT SCHOOL DISTRICT; KARI VICKERS, Principal, in her individual capacity; ANTONIO SANCHEZ, Assistant Principal, in his individual capacity; ANTHONY KOSUB, Assistant Superintendent, in his individual capacity; *Defendants.* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | 4:26-cv-00041<br><br>Case No._____<br><br><br>**<u>COMPLAINT AND JURY DEMAND</u>** |

**CIVIL ACTION**

Plaintiff THEODIS McGEE, individually and as next friend of L.M., a minor, brings this civil action against PLEASANTON INDEPENDENT SCHOOL DISTRICT, KARI VICKERS, Principal, in her individual capacity, ANTONIO SANCHEZ, Assistant Principal, in his individual capacity, and ANTHONY KOSUB, Assistant Superintendent, in his individual capacity, and alleges as follows:

**<u>INTRODUCTION</u>**

1.    Plaintiff brings this civil rights action arising from Pleasanton ISD's repeated failure to protect a 13-year-old student from ongoing bullying and physical assaults; its refusal to follow mandatory district policies designed to safeguard students; its arbitrary, unsupported, and predetermined decision to assign L.M. to a Disciplinary Alternative Education Program ("DAEP"); and its retaliatory discipline of the victim rather than the aggressors. Defendants'

actions and omissions deprived L.M. of rights secured by the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983 and further constitute negligence and violations of Texas statutory duties.

## JURISDICTION

2. This Court has federal question jurisdiction under 28 U.S.C. § 1331 because Plaintiff asserts claims arising under the Constitution and laws of the United States, including 42 U.S.C. § 1983.

3. This Court has civil rights jurisdiction under 28 U.S.C. § 1343(a)(3)–(4), as Plaintiff seeks redress for the deprivation of rights secured by the Fourteenth Amendment and federal civil rights statutes.

4. This Court has supplemental jurisdiction over Plaintiff's related state-law claims under 28 U.S.C. § 1367(a), because those claims form part of the same case or controversy as the federal claims.

5. Venue is proper in this District under 28 U.S.C. § 1391(b) because all acts, omissions, and events giving rise to this action occurred within the Western District of Texas.

## THE PARTIES

6. At all times relevant herein, Plaintiff THEODIS McGEE is the natural father and duly authorized next friend of L.M., a minor, and at all times relevant to this action was an adult resident of Atascosa County, Texas who lived at 119 Circle Court, Pleasanton, Texas 78064. Plaintiff currently resides with his family at 15238 Bufflehead Creek, Van Ormy, Texas 78073 in Bexar County, and brings this action on behalf of his minor child to vindicate L.M.'s constitutional and statutory rights.

7. At all times relevant herein, Defendant PLEASANTON INDEPENDENT

SCHOOL DISTRICT ("PISD") is, and at all times relevant herein was, a public school district organized under the laws of the State of Texas, with its principal offices located at 831 Stadium Drive, Pleasanton, Texas 78064. PISD operates and oversees Pleasanton Junior High School and is responsible for the acts, policies, practices, and omissions of its administrators and employees.

8.      At all times relevant herein, Defendant KARI VICKERS is, and at all times relevant herein was, employed by Pleasanton Independent School District as the Principal of Pleasanton Junior High School. She is an adult resident of Texas and may be served at her principal place of employment, 1280 Jolly Street, Pleasanton, Texas 78064.

9.      At all times relevant herein, Defendant ANTONIO SANCHEZ is, and at all times relevant herein was, employed by Pleasanton Independent School District as an Assistant Principal at Pleasanton Junior High School. He is an adult resident of Texas and may be served at his principal place of employment, 1280 Jolly Street, Pleasanton, Texas 78064.

10.     At all times relevant herein, Defendant ANTHONY KOSUB is, and at all times relevant herein was, employed by Pleasanton Independent School District as an Assistant Superintendent. He is an adult resident of Texas and may be served at his principal place of employment, 831 Stadium Drive, Pleasanton, Texas 78064.

11.     The true names and capacities of persons or entities, whether individual, corporate, associate, or otherwise, who may be responsible for some of the claims alleged herein are currently unknown to Plaintiff. Plaintiff will seek leave from the court to amend this complaint to reflect the true names and capacities of such other responsible parties when their identities become known.

12.     All claims asserted herein are brought against PLEASANTON INDEPENDENT SCHOOL DISTRICT, including its predecessors, successors, agents, employees, and assigns, to the fullest extent permitted by law.

**FACTUAL BACKGROUND**

13.     Defendant Pleasanton Independent School District ("PISD") is a public school district responsible for providing educational services, maintaining student safety, and enforcing district policies across its campuses, including Pleasanton Junior High School.

14.     PISD operates and oversees Pleasanton Junior High School, and is responsible for the acts, omissions, policies, and practices of its administrators and employees, including those named as Defendants herein.

15.     On February 13, 2025, L.M. was physically assaulted by four to five students in the boys' locker room during athletics. The attack was unprovoked, occurred in a supervised area, and involved multiple blows to L.M.'s body.

16.     Plaintiff immediately reported the assault to Defendant, Assistant Principal Antonio Sanchez, providing the district with actual notice of a safety threat involving multiple aggressors.

17.     Despite this notice, Defendant Sanchez took no protective or supervisory action to separate the aggressors, increase monitoring, or implement safety measures to protect L.M. from further harm.

18.     On February 19, 2025, Plaintiff emailed Defendant Sanchez during the early morning hours, requesting a follow-up regarding the February 13 assault, noting that no one from the school had contacted the family.

19.     Later that day, L.M. was approached and threatened by a group of boys at the Pleasanton Performing Arts Center ("PAC"), who told him they were "going to get him."

20.     Defendant Sanchez emailed Plaintiff again only after another parent threatened to contact the superintendent, demonstrating a reactive rather than proactive response to escalating safety concerns.

4

21. Defendant Sanchez confirmed by phone that video evidence showed ongoing harassment of L.M. by the same students who assaulted him on February 13. This confirmation established that the district knew the threat was continuing and escalating.

22. On February 20, 2025, video evidence shows L.M. was approached from behind by two of the same aggressors involved in the prior incidents. The attack occurred in a common area during school hours.

23. One student struck L.M. in the face, and L.M. defended himself against the assault.

24. A third student then attacked L.M. while he was being physically restrained by Assistant Principal Antonio Sanchez, preventing him from defending himself and exposing him to additional harm.

25. The school never notified Plaintiff of the assault, despite district policy requiring immediate parent notification for incidents involving injury or violence.

26. L.M. texted his mother at 2:02 PM, reporting that he had been involved in a fight with multiple attackers, which was the first notice the family received.

27. The school suspended L.M. for three days, citing a "pending investigation," and subsequently lengthened this suspension an additional three days pending the DAEP hearing and decision, even though L.M. was the victim of a multi-student assault and had acted in self-defense.

28. The Pleasonton ISD Clinic Pass documents head and eye injury, discoloration, and numbness in both hands including the pinky finger, consistent with the assault. The handwritten notes reflect visible injury and neurological symptoms.

29. No administrator, nurse, or parent was notified of L.M.'s injuries, and no medical assessment was performed beyond a lice check.

30. L.M. was sent back to class without treatment, contrary to district policy and basic

medical protocol for head and neck injuries.

31.    On February 24, 2025, L.M. was evaluated at Alamo City Urgent Care and diagnosed with a head injury.

32.    L.M. was also diagnosed with cervicalgia, reflecting neck trauma consistent with the February 20 assault.

33.    His symptoms included dizziness, headache, and anxiety, requiring medical monitoring and activity restrictions.

34.    The physical and emotional injuries L.M. sustained were the foreseeable and direct result of PISD's failure to intervene, failure to separate known aggressors, and failure to implement basic safety measures after receiving repeated notice of escalating threats and violence.

35.    At a February 25 meeting, Defendant Principal Vickers admitted that staff had "screwed this whole thing up," acknowledging procedural failures and mishandling of the incidents.

36.    At the February 26 DAEP hearing, no bullying investigation report was provided, despite mandatory requirements under PISD Policy FFI (Local).

37.    No self-defense determination was made, even though district policy expressly prohibits disciplining a student who uses reasonable self-defense in response to bullying.

38.    No witness statements or video evidence were presented at the hearing, depriving L.M. of a meaningful opportunity to be heard.

39.    Defendant, Assistant Superintendent Anthony Kosub, recommended DAEP placement for "Assault on an Employee," despite evidence contradicting the allegation and despite the absence of required investigative findings.

40.    Teacher Garrett Lowery contradicted the allegation, and video evidence shows the

employee initiated physical contact with L.M., not the other way around.

41. On March 10, 2025, the district issued a final report finding "no bullying."

42. The report was completed after the DAEP hearing, in violation of district policy and basic due process.

43. The findings were predetermined to justify the DAEP outcome, rather than being based on evidence gathered before the disciplinary decision.

44. The DAEP placement imposed on L.M. represented a significant change in his educational status, bringing stigma, loss of instructional time, and long-term academic consequences that invoked greater procedural protections under the Fourteenth Amendment.

### <u>COUNT I</u>
**42 U.S.C. § 1983 – FOURTEENTH AMENDMENT DUE PROCESS**
***(Against Defendants Vickers, Sanchez, and Kosub)***

45. Plaintiff hereby repeats all of the allegations and Exhibits contained in the Complaint thus far above and incorporates the same as if fully set forth at length herein.

46. Defendants' actions deprived L.M. of the procedural protections guaranteed by the Fourteenth Amendment, including notice of the charges, disclosure of evidence, and a meaningful opportunity to respond before the imposition of significant discipline.

47. At all times relevant, Defendants Vickers, Sanchez, and Kosub were acting under color of state law in their official capacities as administrators of Pleasanton Independent School District, exercising authority delegated by state statute, district policy, and their positions of trust over student safety, discipline, and investigations.

48. Defendants deprived L.M. of his constitutionally protected liberty and property interests in public education, including his right to be free from arbitrary and capricious state actions. The disciplinary measures taken, especially the DAEP placement based on an allegation

of "Assault on an Employee," represented a stigmatizing, unusual, and significant departure from normal school discipline, triggering increased due process protections under the Fourteenth Amendment.

49. Defendants imposed severe disciplinary consequences, including a three-day suspension and a DAEP placement, without providing the minimum procedural protections required by *Goss v. Lopez*, such as timely written notice of the charges, disclosure of evidence, and a meaningful opportunity to respond.

50. Defendants ignored exculpatory evidence, including video footage showing L.M. being attacked from behind, witness statements contradicting the allegation of "Assault on an Employee," and medical documentation confirming injuries consistent with being the victim of a multiple-student assault. Their refusal to consider this evidence made the disciplinary process fundamentally unfair.

51. Defendants predetermined the DAEP outcome, as shown by the absence of any bullying investigation report at the time of the hearing, the failure to make a mandatory self-defense determination under PISD Policy FFI (Local), and the subsequent issuance of a "no bullying" finding only after the DAEP decision had already been made.

52. Defendants failed to follow mandatory district policies, including those requiring prompt parental notification of injuries, timely investigations, self-defense determinations, and presentation of evidence at disciplinary hearings. These violations directly resulted in the denial of constitutionally required notice and a meaningful opportunity to be heard.

53. Defendants failed to provide L.M. and his parent with notice and a meaningful opportunity to be heard, including failing to notify the family of the February 20 assault, failing to disclose the evidence relied upon, failing to present witness statements or video at the DAEP hearing, and failing to allow L.M. to present evidence in his defense. These omissions violated the

minimum requirements of procedural due process under *Goss v. Lopez*, 419 U.S. 565 (1975).

54.    Defendants' conduct was arbitrary, capricious, and conscience-shocking, including restraining L.M. while he was attacked by a third student, disregarding clear evidence of his victimization, and imposing discipline unsupported by facts. Their actions affirmatively increased the danger to L.M. and constituted a violation of his substantive due-process rights.

55.    The DAEP placement caused an unusual and substantial hardship for L.M. compared to typical school life issues, similar to the standard established in *Sandin v. Conner*, and the actions of the Defendants intentionally heightened the risk to L.M. in a way that is shocking to the conscience.

56.    Each Defendant personally engaged in the constitutional violations: Sanchez restrained L.M. during an assault, initiated unsupported disciplinary action, and failed to protect L.M. by ignoring repeated notices; Vickers initiated unsupported disciplinary action; and Kosub approved the unconstitutional discipline by recommending DAEP placement despite conflicting evidence.

57.    As a direct and proximate result of Defendants' unconstitutional conduct, L.M. suffered physical injury, emotional trauma, educational disruption, stigmatization associated with DAEP placement, loss of instructional time, and ongoing fear and anxiety related to school attendance and safety. These injuries were the foreseeable consequence of Defendants' arbitrary, capricious, and conscience-shocking actions and the denial of the procedural protections guaranteed by the Fourteenth Amendment.

**COUNT II**
**42 U.S.C. § 1983 – EQUAL PROTECTION**
*(Against Defendants Vickers, Sanchez, and Kosub)*

58.    Plaintiff hereby repeats all of the allegations and Exhibits contained in the Complaint thus far above and incorporates same as if fully set forth at length herein.

59.     Defendants Vickers, Sanchez, and Kosub, acting under color of state law, violated L.M.'s rights under the Equal Protection Clause of the Fourteenth Amendment by intentionally treating him differently from similarly situated students involved in the same incidents, without a rational basis and in a manner that was arbitrary, retaliatory, and discriminatory.

60.     Defendants punished L.M., the victim of multiple assaults, while failing to discipline the known aggressors, despite clear video evidence, repeated notice, and corroborating witness accounts. Students who engaged in the same or more serious misconduct were not disciplined, demonstrating disparate treatment of similarly situated comparators.

61.     Similarly situated aggressors who engaged in the same or more serious misconduct were treated more favorably, were not subjected to DAEP placement indefinitely, and were not disciplined in accordance with district policy, demonstrating intentional and arbitrary differential treatment.

62.     Defendants failed to protect L.M. despite repeated notice of escalating harassment, threats, and physical violence, while providing protection, leniency, and favorable treatment to the aggressors under similar circumstances. This selective non-protection constitutes intentional disparate treatment.

63.     Defendants retaliated against L.M. for reporting bullying and defending himself, including suspending him, recommending DAEP placement, and labeling him as the aggressor despite evidence to the contrary. Students who did not report bullying or who were the aggressors were not subjected to similar discipline or character besmirching accusations.

64.     Defendants applied discipline in a discriminatory and arbitrary manner, disregarding district policy, ignoring exculpatory evidence, and imposing harsher consequences on L.M. than on similarly situated students involved in the same incidents. Their actions were motivated by animus, retaliation, and a desire to shield staff from accountability for mishandling

the assaults.

65.    Defendants' conduct further violated the Equal Protection Clause under a class-of-one theory, as L.M. was intentionally treated differently from other similarly situated students without any rational basis, legitimate justification, or evidence-based reason for the disparate treatment.

66.    As a direct and proximate result of Defendants' unequal and retaliatory treatment, L.M. suffered emotional trauma, stigmatization, educational disruption, and fear of returning to school, injuries that were the foreseeable consequence of Defendants' discriminatory conduct.

## COUNT III
### 42 U.S.C. § 1983 – MONELL LIABILITY
### *(Against Pleasanton Independent School District)*

67.    Plaintiff hereby repeats all of the allegations and Exhibits contained in the Complaint thus far above and incorporates same as if fully set forth at length herein.

68.    At all times relevant, Defendant PLEASANTON INDEPENDENT SCHOOL DISTRICT ("PISD") acted through its final policymakers, administrators, and employees, and was responsible for establishing, implementing, and enforcing the policies, customs, and practices governing student safety, bullying investigations, discipline, and due-process procedures.

69.    Under Texas law, campus principals, assistant principals, and district-level administrators, such as assistant superintendents, possess final policymaking authority with respect to student discipline, bullying investigations, and DAEP placement decisions, and their actions constitute official policy for purposes of *Monell* liability.

70.    PISD maintained customs, practices, and failures to train or supervise that were so widespread, persistent, and well-settled as to constitute official policy. These unconstitutional customs were the moving force behind the violations of L.M.'s Fourteenth Amendment rights.

71.    These customs, practices, and failures to train were the moving force behind the

11

constitutional violations suffered by L.M., directly causing the deprivation of his procedural and substantive due-process rights and the discriminatory treatment he endured.

72.     PISD failed to properly train and supervise staff on mandatory bullying investigations, including the requirements of Texas Education Code § 37.0832 and PISD Policy FFI (Local). This neglect led to repeated instances of not investigating bullying, failing to document assaults, and ignoring known threats, showing a deliberate indifference to the rights and safety of students like L.M.

73.     PISD failed to enforce its own mandatory policies, including FFI (Local), which requires timely investigations, self-defense determinations, parent notification, and documentation of bullying incidents. The district's consistent disregard of these mandatory procedures reflects a well-established custom of non-enforcement.

74.     PISD maintained a custom of ignoring or minimizing bullying reports, as evidenced by its failure to act after the February 13 assault, its confirmation of harassment on February 19 without intervention, and its post-hoc "no bullying" finding issued only after the DAEP decision had already been made. This pattern demonstrates deliberate indifference to student safety and constitutional rights.

75.     PISD maintained a custom of disciplining victims of bullying rather than aggressors, including suspending L.M., recommending DAEP placement, and disregarding video and witness evidence showing he was the victim of multiple assaults. This custom resulted in arbitrary and discriminatory discipline that violated L.M.'s due process and equal protection rights.

76.     PISD's final policymakers, including Principal Vickers, Assistant Principal Sanchez, and Assistant Superintendent Kosub, ratified unconstitutional conduct by approving or affirming disciplinary actions taken without investigation, without evidence, and in violation of mandatory district policies. Their ratification constitutes official policy under *Monell* and directly

caused the constitutional injuries suffered by L.M.

77.     As a direct and proximate result of PISD's unconstitutional policies, customs, failures to train, and policymaker ratification, L.M. suffered emotional trauma, physical harm, educational disruption, stigmatization, and loss of instructional time, injuries that were the foreseeable consequence of PISD's deliberate indifference.

## COUNT IV
## NEGLIGENT SUPERVISION
### *(Against Pleasanton Independent School District)*

78.     Plaintiff hereby repeats all of the allegations and Exhibits contained in the Complaint thus far above and incorporates same as if fully set forth at length herein.

79.     At all times relevant, Defendant PLEASANTON INDEPENDENT SCHOOL DISTRICT ("PISD") owed L.M. a duty to exercise reasonable care in supervising students and maintaining a safe educational environment, including the duty to prevent foreseeable harm from known student aggressors and to enforce district safety and anti-bullying policies.

80.     PISD breached its duty of care through acts and omissions that constitute negligent supervision, including but not limited to:

a.  Failing to supervise students known to be violent, despite actual notice of prior assaults, threats, and harassment directed at L.M., and despite video evidence confirming repeated misconduct by the same group of students.

b.  Failing to monitor areas where bullying and assaults occurred, including locker rooms, hallways, and common areas, even after multiple incidents had been reported and confirmed, thereby allowing foreseeable harm to occur.

81.     The harm L.M. experienced was entirely foreseeable, since PISD had repeated notice of increasing aggression by the same group of students but failed to implement even basic supervisory or protective measures that could have prevented the assaults.

82.     As a direct and proximate result of PISD's negligent supervision, L.M. suffered physical injury, emotional trauma, fear, anxiety, and educational disruption, including loss of instructional time, diminished academic progress, and ongoing distress related to school attendance and safety. These injuries were the foreseeable consequence of PISD's failure to supervise known aggressors and to maintain a safe school environment.

## COUNT V
## NEGLIGENCE – FAILURE TO PROTECT
### (Against Pleasanton Independent School District)

83.     Plaintiff hereby repeats all of the allegations and exhibits contained in the Complaint thus far above and incorporates same as if fully set forth at length herein.

84.     At all times relevant, Defendant PLEASANTON INDEPENDENT SCHOOL DISTRICT ("PISD") owed L.M. a duty to exercise reasonable care to protect students from foreseeable harm, including harm arising from known bullying, harassment, and violent student misconduct. This duty includes enforcing district safety policies, responding to reports of danger, and taking reasonable steps to prevent further injury once a threat is known.

85.     PISD breached its duty of care through acts and omissions constituting negligent failure to protect, including but not limited to:

a.  Failing to intervene despite repeated notice of escalating harassment, threats, and physical assaults against L.M., including notice on February 13, February 19, and February 20, 2025, and despite video evidence confirming ongoing danger posed by the same group of students.

b.  Failing to implement reasonable safety measures after receiving multiple reports of violence, including failing to increase supervision, failing to separate known aggressors, failing to monitor high-risk areas, and failing to notify the parent or provide medical care after the February 20 assault.

14

86.    The injuries and emotional trauma L.M. sustained were the natural and foreseeable consequence of PISD's failure to act on clear warnings, documented threats, and video-confirmed assaults.

87.    As a direct and proximate result of PISD's negligent failure to protect, L.M. suffered physical injury, emotional trauma, fear, anxiety, and educational disruption, including loss of instructional time, diminished academic progress, and ongoing distress related to school attendance and safety. These injuries were the foreseeable consequence of PISD's failure to act on known threats and to take reasonable steps to protect L.M. from further harm.

<u>**COUNT VI**</u>
**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**
*(Against Pleasanton Independent School District)*

88.    Plaintiff hereby repeats all of the allegations and Exhibits contained in the Complaint thus far above and incorporates same as if fully set forth at length herein.

89.    Emotional distress damages are recoverable as part of Plaintiff's negligence claims, and the severe emotional harm L.M. suffered was a foreseeable result of PISD's negligent supervision, failure to protect, and mishandling of investigations and discipline.

90.    At all times relevant, Defendant PLEASANTON INDEPENDENT SCHOOL DISTRICT ("PISD") owed L.M. a duty to exercise reasonable care in supervising students, responding to reports of danger, and maintaining a safe educational environment. This duty included preventing foreseeable emotional harm arising from repeated bullying, physical assaults, and the district's own mishandling of investigations and disciplinary actions.

91.    PISD breached its duty through acts and omissions constituting negligent infliction of emotional distress, including but not limited to:

   a.   Emotional trauma resulting from repeated assaults, threats, and harassment by known aggressors, which PISD failed to prevent despite actual notice and video

confirmation of escalating danger.

b.  Anxiety, fear, and educational disruption caused by PISD's failure to intervene, failure to notify the parent, failure to provide medical care, and decision to discipline L.M. rather than protect him.

92.     As a direct and proximate result of PISD's negligent conduct, L.M. suffered severe emotional distress, mental anguish, and psychological harm of a nature and degree that no reasonable person could be expected to endure, including fear of returning to school, loss of trust in school officials, and ongoing anxiety related to safety and retaliation. These emotional-distress damages flow directly from PISD's independent acts of negligence and are recoverable under Texas law.

## DAMAGES

93.     Plaintiff seeks all available relief permitted by law, including but not limited to the following:

a.  Compensatory damages, including all economic and non-economic losses arising from the assaults, the district's failures to protect L.M., and the unconstitutional disciplinary actions imposed upon him.

b.  The recovery of medical expenses, including costs associated with the evaluation and treatment of L.M.'s head injury, cervicalgia, neurological symptoms, and any future medical care reasonably expected to be incurred.

c.  Emotional distress damages for the severe mental anguish, anxiety, fear, and psychological trauma suffered by L.M. as a result of repeated assaults, lack of protection, retaliatory discipline, and the district's mishandling of investigations and safety obligations.

d.  Educational harm damages, including loss of instructional time, disruption of

16

academic progress, stigma associated with DAEP placement, and the long-term educational consequences of being wrongfully disciplined.

e.  Punitive damages against the individual Defendants for their willful, wanton, reckless, and consciously indifferent conduct, which violated clearly established constitutional rights and demonstrated deliberate disregard for L.M.'s safety and due-process protections.

f.  Reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988, together with pre- and post-judgment interest as allowed by law.

g.  Pre- and post-judgment interest as allowed by law.

h.  Any further relief the Court deems just and proper.

## PRAYER FOR RELIEF

94.    **WHEREFORE,** for the foregoing reasons and pursuant to the Counts above, Plaintiff, THEODIS McGEE, individually and as next friend of L.M., a minor, demands judgment against the Defendants, PLEASANTON INDEPENDENT SCHOOL DISTRICT, KARI VICKERS, Principal, in her individual capacity, ANTONIO SANCHEZ, Assistant Principal, in his individual capacity, and ANTHONY KOSUB, Assistant Superintendent, in his individual capacity, and in the alternative, for alternative, for general, compensatory, and punitive damages, reasonable attorney's fees and costs of suit with interest, and any further relief which the court may deem equitable and just.

## JURY DEMAND

95.    Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all issues so triable in this action.

17

## **CERTIFICATION**

96.    Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

Respectfully Submitted,
**LLG National Law Group**

Robert S. Mactavish, Esquire
Phoenix Corporate Tower
3003 N. Central Avenue Suite 685
Phoenix, AZ 85012
(T) 575-517-6542
robert.mactavish@llgnational.com
*Attorney for Plaintiffs*

## VERIFICATION

STATE OF TEXAS              §
                           §
BEXAR COUNTY               §

Before me, the undersigned notary, on this day personally appeared THEODIS McGEE, the affiant, whose identity is known to me. After I administered an oath, affiant testified as follows:

"My name is THEODIS McGEE. I am capable of making this verification. I have read this Original Petition and Jury Demand. The facts stated in it are within my personal knowledge and are true and correct."

*Theodis McGee*

THEODIS McGEE

SWORN AND SUBSCRIBED before me on this day of May 26 , 2026.

*Belen Solis Molina*
Notary Public, State of Texas

BELEN SOLIS MOLINA
Notary Public, State of Texas
Comm. Expires 07-26-2027
Notary ID 134475673

19