**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**PECOS DIVISION**

| | | |
|---|---|---|
| **Theodis McGee, individually and as next friend of L.M., a minor, Plaintiffs** | § § § § | |
| **vs.** | § § | **Civil Action No. 4:26-cv-00041-DC-DF** |
| **Pleasanton Independent School District; Kari Vickers, Principal, in her individual capacity; Antonio Sanchez, Assistant Principal, in his individual capacity; Anthony Kosub, Assistant Superintendent, in his individual capacity, Defendants** | § § § § § § § § | **JURY TRIAL DEMANDED** |

**DEFENDANTS' FRCP 12(b) MOTION TO DISMISS**
**PLAINTIFF'S ORIGINAL COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

Defendants Pleasanton Independent School District (PISD), Kari Vickers (Vickers), Antonio Sanchez (Sanchez), and Anthony Kosub (Kosub) move this court to dismiss all claims against them, pursuant to FRCP 12(b)(6), for failure to state a claim upon which relief can be granted. The individual defendants also assert their qualified immunity from suit. Defendants would show the Court as follows:

## I. NATURE AND STATE OF THE PROCEEDING

1. On June 1, 2026, Plaintiff Theodis McGee filed his Complaint, individually and as next friend of L.M., a minor. *See* Dkt. No. 1. Plaintiff complains that L.M. was issued a suspension and a temporary placement in a Disciplinary Alternative Education Program (DAEP) for assault on an employee, in violation of his due process and equal protection rights. Dkt. No. 1. Plaintiff

also asserts tort claims for negligent supervision, negligent failure to protect, and negligent infliction of emotional distress. *Id.*

## II. ALLEGED FACTS

2. On February 13, 2025, L.M. was involved in an incident in the boys' locker room that Plaintiff characterizes as an assault by other students.[1] *See* Dkt. No. 1, ¶ 15. Plaintiff further alleges that, on February 19, 2025, L.M. was threatened by a group of students at the PISD Performing Arts Center. *See* Dkt. No. 1, ¶ 19. On February 20, 2025, two students involved in the prior incidents approached L.M. from behind. *See* Dkt. No. 1, ¶ 22. According to the Plaintiff's Original Complaint, L.M. responded physically, and during the ensuing altercation a third student struck L.M. while Defendant Sanchez was attempting to restrain him. *See* Dkt. No. 1, ¶¶ 23-24.

3. Following the February 20 incident, the District suspended L.M. for six days pending an investigation and a disciplinary hearing. *See* Dkt. No. 1, ¶ 27. A DAEP conference was held on February 26, 2025. *See* Dkt. No. 1, ¶ 36. Following that conference, Defendant Kosub recommended placement in the DAEP for Assault on an Employee. *See* Dkt. No. 1, ¶ 39. Thereafter, on March 10, 2025, the District concluded its bullying investigation and determined that the reported conduct did not constitute bullying under applicable District policy and law. *See* Dkt. No. 1, ¶ 41. At the time of the underlying incident, Kosub was employed as Assistant Superintendent of PISD, Vickers as Principal of PISD Junior High, and Sanchez the Assistant Principal as PISD Junior High.

## III. MOTION TO DISMISS STANDARD

4. Dismissal is appropriate under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) must be read in concert

1 This motion accepts the Complaint's well-pleaded factual allegations as true solely for purposes of the motion.

with the pleading standard set forth in Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see Ashcroft v. Iqbal,* 556 U.S. 662, 677–68 (2009). In order to survive a motion to dismiss, plaintiffs must provide the grounds of entitlement to relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (internal citations omitted). Indeed, the complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court, drawing upon its 'judicial experience and common sense,' to reasonably infer that the defendant is liable for the misconduct alleged." *Aleman v. Edcouch Elsa Indep. Sch. Dist.,* 982 F. Supp. 2d 729, 732 (S.D. Tex. 2013) (citing *Iqbal,* 556 U.S. at 678, *Twombly,* 550 U.S. at 556). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the Petition has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal,* 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). "Thus, although all reasonable inferences will be resolved in favor of the plaintiff, the plaintiff must plead 'specific facts, not mere conclusory allegations.'" *Tipps v. McCraw*, 945 F. Supp. 2d 761, 765 (W.D. Tex. 2013) (citing *Tuchman v. DSC Commc'ns Corp.,* 14 F.3d 1061, 1067 (5th Cir.1994)).

## IV. ARGUMENT AND AUTHORITY

### A. Plaintiff failed to state a due process claim.

5. Plaintiff alleges Defendants "[i]mposed severe disciplinary consequences, including a three-day suspension and a DAEP placement, without proving the minimum procedural

protections required by *Goss v. Lopez*, such as timely written notice of the charges, disclosure of evidence, and a meaningful opportunity to respond." *See* Dkt. No. 1, ¶ 49. The Fourteenth Amendment forbids the State to deprive any person of life, liberty, or property without due process of law. *Goss v. Lopez*, 419 U.S. 565, 572 (1975). Schools are constrained to recognize a student's legitimate entitlement to a public education as a property interest which is protected by the Due Process Clause and which may not be taken away for misconduct without adherence to the minimum procedures required by that clause. *Id*. at 574. However, a short suspension is a far milder deprivation than expulsion. *Id*. at 576. The Supreme Court recognized that schools are vast and complex, often calling for immediate disciplinary action. *Id*. at 580. Due process requires, in connection with a suspension of 10 days or less, that the student be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story. *Id*. at 581.

6. The appellees in *Goss v. Lopez* were suspended for up to 10 days. In contrast, Plaintiff was suspended for three days pending an investigation and DAEP hearing. The Fifth Circuit has distinguished access to public education and transfer to a program with stricter discipline. *Nevares v. San Marcos Consol. Indep. Sch. Dist.*, 111 F.3d 25, 27 (5th Cir. 1997). DAEPs are maintained by Texas schools for students whose violations of the law or the school's code of conduct fall short of triggering suspension or expulsion, but who for reasons of safety and order must be removed from the regular classroom. *Id.* A student's transfer to an alternative education program does not deny access to public education and therefore does not violate a Fourteenth Amendment interest. *Id*. at 26; *Harris ex rel. Harris v. Pontotoc Cnty. Sch. Dist.*, 635 F.3d 685, 690 (5th Cir. 2011).

7. Here, Plaintiff's allegations reflect that a stated charge and a hearing existed: L.M. faced a charge of "Assault on an Employee" and a DAEP hearing was held on February 26, 2025 (*See* Dkt. No. 1, ¶¶ 36, 39). The only other discipline — a three-day suspension, later extended pending the hearing — required no more than *Goss*'s informal notice-and-response floor, which the pleaded charge and hearing satisfied. *See* Dkt. No. 1, ¶ 27. Because the DAEP placement implicates no protected interest and the short suspension received the process it was due, Plaintiff's procedural due process claim fails.

**B. Plaintiff failed to state an equal protection claim.**

8. To state an Equal Protection claim under the Fourteenth Amendment, a plaintiff must plausibly allege that state actors treated him differently from similarly situated persons because of membership in an identifiable protected class or that the differential treatment otherwise violated a recognized equal-protection theory. *Big Tyme Investments, L.L.C. v. Edwards*, 985 F.3d 456, 468 (5th Cir. 2021). Mere dissatisfaction with disciplinary decisions does not implicate the Equal Protection Clause. Here, Plaintiff does not allege that L.M. is a member of any protected class. *See* Dkt. No. 1. Count II contains no allegation that Defendants acted on the basis of race, national origin, sex, religion, disability, or any other protected characteristic. Instead, Plaintiff alleges only that Defendants allegedly disciplined L.M. more harshly than other students involved in school incidents. Dkt. No. 1, ¶¶ 59-66. Such allegations do not state a traditional Equal Protection claim. Absent allegations of discrimination based on membership in a protected class or other recognized theory, Plaintiff has failed to plead the essential elements of an equal-protection violation.

9. Even if protected-class status were not required, Plaintiff's allegations fail because the Complaint does not identify any similarly situated comparator. A plaintiff asserting selective

enforcement or disparate-treatment claims must plead facts showing that comparators were similarly situated in all material respects and received more favorable treatment. *Lindquist v. City of Pasadena Tex.,* 669 F.3d 225, 234 (5th Cir. 2012). Conclusory assertions that others were treated differently are insufficient under *Twombly* and *Iqbal*. Here, Plaintiff merely alleges that unidentified "aggressors" were treated more favorably and that students who engaged in "the same or more serious misconduct" were not disciplined in the same manner. Dkt. No. 1, ¶¶ 60-64. The Complaint, however, identifies no student by name, no student's disciplinary history, no student's conduct, no disciplinary outcome imposed upon any comparator, and no facts establishing that any purported comparator was similarly situated to L.M. in all relevant respects. These allegations are legal conclusions masquerading as factual allegations and are not entitled to a presumption of truth.

10. Plaintiff repeatedly alleges that Defendants acted out of "retaliation" because L.M. reported bullying or defended himself. Dkt. No. 1, ¶¶ 59, 63-64, 66. Retaliation is not itself an Equal Protection violation. The Equal Protection Clause protects against discriminatory classifications and disparate treatment based upon impermissible classifications, not generalized claims that public officials acted unfairly or with improper motive. Even accepting Plaintiff's allegations as true, the Complaint alleges only dissatisfaction with disciplinary decisions and purported retaliation arising from school administrative actions. Such allegations do not establish a violation of the Equal Protection Clause.

### C. All constitutional claims against Vickers, Sanchez, and Kosub in their official capacities are redundant and must be dismissed.

11. Suits against government employees in their official capacities "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. N. Y. City Dept. of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978). Further, "[a]s long as the government

entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). As such, if a plaintiff's claims are against the individual defendants in their official capacities, those claims are redundant of his claims against the District. *Jenkins v. Bd. of Ed. of the Hous. Indep. Sch. Dist.*, 937 F. Supp. 608, 613 (S.D. Tex. 1996) (holding that "claims against the Individual Defendants in their official capacities should be dismissed, as their presence in this case is merely redundant."). Here, Plaintiff alleges Defendants Vickers, Sanchez, and Kosub were acting in their official capacity in the underlying incident. *See* Dkt. No. 1, ¶ 56. Any claims asserted against Defendants Vickers, Sanchez, and Kosub are indistinguishable from the claims asserted against PISD, and as such the claims against Vickers, Sanchez, and Kosub in their official capacity must be dismissed.

**D. Defendants Vickers, Sanchez, and Kosub retain their qualified immunity from Plaintiff's constitutional claims.**

12. Defendants Vickers, Sanchez, and Kosub assert and maintain that they are entitled to the defense of qualified immunity. Qualified immunity shields a government official from civil liability for damages based on the performance of discretionary functions if the official's acts were objectively reasonable in light of clearly established law. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "A constitutional right must be implicated, and 'the contours of the right must be sufficiently clear that a reasonable official would understand that what [he is] doing violates that right.'" *Id.* (footnote omitted) (quoting *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987)). It is settled that the qualified immunity doctrine is immunity from suit rather than a mere defense to liability, which should be resolved at the earliest possible stage of litigation. *Hunter,* 502 U.S. at 227.

13. In suits brought under federal law, government employees are presumptively entitled to the defense of qualified immunity and, once the defense is asserted, the burden shifts to the plaintiff to show that immunity does not bar recovery. *Salas v. Carpenter*, 980 F.2d 299, 306 (5th Cir. 1992); *Bennett v. City of Grand Prairie*, *Tex.*, 883 F.2d 400, 408 (5th Cir. 1989). In assessing a claim of qualified immunity, a court engages in a two-step analysis. The Court must decide (1) whether facts alleged or shown by plaintiff make out a violation of a constitutional right, and (2) if so, whether that right was clearly established at time of defendant's alleged misconduct. *Pearson v. Callahan,* 555 U.S. 223, 226 (2009) (citing *Saucier v. Katz,* 533 U.S. 194, 201(2001)). Courts may "exercise their sound discretion in deciding which of the two prongs should be addressed first in light of circumstances in the particular case at hand." *Pearson,* 555 U.S. at 226. Even if the plaintiff has alleged a constitutional violation, qualified immunity may still apply because "[e]ven if the official's conduct violated a constitutional right, he is entitled to qualified immunity if the conduct was objectively reasonable." *Id.* at 105 (citing *Spann v. Rainey*, 987 F.2d 1110, 1114 (5th Cir. 1993)). Applying these principles in the instant case, the Vickers, Sanchez, and Kosub are entitled to qualified immunity.

14. First, the alleged actions taken by Defendants Vickers, Sanchez, and Kosub and complained of by Plaintiff were discretionary. "An official acts within his discretionary authority when he performs nonministerial acts within the boundaries of his official capacity." *Tamez v. City of San Marcos,* 118 F.3d 1085, 1091-92 (5th Cir.1997). "Executive officials who must necessarily exercise discretion in the scope of their duties are granted qualified immunity from damage suits." *Cronen v. Texas Dept. of Human Services,* 977 F.2d 934, 939 (5th Cir. 1992). In a discretionary action, the government official acts not pursuant to specific orders, spelled out in detail beforehand, but engages in deliberation and the exercise of judgment. *Tamez*, 118 F.3d at

1092. Taking Plaintiff's well-pleaded facts as true, he has failed to plead facts showing that Vickers, Sanchez, and Kosub were acting, or failing to act, pursuant to specific orders, spelled out in detail. *See* Dkt. No. 1. Likewise, Plaintiff concedes Defendants Sanchez, Vickers, and Kosub were acting in their official capacities as administrators of PISD in restraining L.M. and initiating disciplinary proceedings. *See* Dkt. No. 1, ¶ 47, 56.

15. Next, for the reasons elucidated above, Plaintiff has failed to state a claim for due process or equal protection, and the individual defendants retain their qualified immunity accordingly. *Pearson,* 555 U.S. at 226. Finally, "plaintiffs must demonstrate prior to discovery that their allegations are sufficiently fact-specific to remove the cloak of protection afforded by an immunity defense." *Jackson v. City of Beaumont Police Dep't,* 958 F.2d 616, 620 (5th Cir. 1992). "Mere conclusory allegations and bold assertions are insufficient to meet this heightened standard." *Streetman v. Jordan,* 918 F.2d 555, 557 (5th Cir.1990).

### E. Plaintiff cannot show municipal liability and his claims against PISD must be dismissed

16. A local governmental entity, such as a school district, can only be held liable under Section 1983 for acts for which it is actually responsible. *See Monell v. Department of Social Services of New York*, 436 U.S. 658, 691 (1978). To establish governmental liability under Section 1983, a plaintiff must show: (1) a policymaker with final policymaking authority; (2) an official policy; and (3) a violation of constitutional rights whose "moving force" is the policy or custom. *Doe ex rel. Magee*, 675 F.3d at 866. Thus, "a governmental entity cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a governmental entity cannot be held liable under § 1983 on a *respondeat superior* theory." *Doe,* 153 F.3d 211, 215 (5th Cir. 1998) (citing *Monell,* 436 U.S. at 691). Here, Plaintiff has failed to allege facts showing any of the *Monell* elements, and his Section 1983 claim against PISD must be dismissed.

17. Plaintiff incorrectly asserts that campus principals, assistant principals, and assistant superintendents posess final policymaking authority regarding student discipline and bullying investigations. *See* Dkt. No. 1, ¶ 69. Whether a particular official has "final policy-making authority" is a question of state law. *St. Louis v. Praprotnik,* 485 U.S. 112, 128 (1988). It is well-settled law that, in Texas, only the District's Board of Trustees has final policy-making authority in an independent school district. Tex. Educ. Code Ann. §11.051; *Jett v. Dallas Indep. School Dist.,* 7 F.3d 1241, 1245 (5th Cir. 1993). *Monell* instructs courts to examine whether the policymaker either adopted an injury-causing policy or delegated authority to adopt such a policy. *McClelland v. Katy Indep. Sch. Dist*., 63 F.4th 996, 1011 (5th Cir. 2023). Decision making authority is not the same as policy making authority. *Id*. Plaintiff alleged no facts showing that the PISD Board of Trustees promulgated an unconstitutional policy or acquiesced to an unconstitutional custom. *See* Dkt. No. 1. Plaintiff has further failed to allege any facts that show the PISD Board delegated policymaking authority to Vickers, Sanchez, or Kosub in connection with the disciplinary action. *See id*. Plaintiff has not shown that the PISD promulgated injury, so the PISD Board cannot be held liable for alleged violations of Plaintiff's equal protection rights.

18. An "official policy or custom" of a school district is: (1) "a policy statement, ordinance, regulation or decision that is officially adopted and promulgated by the district, or by an official to whom the district has delegated policy-making authority;" or (2) "a persistent, widespread practice of district officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents district policy." *Eugene v. Alief Indep. Sch. Dist.,* 65 F.3d 1299, 1304 (5th Cir.1995). Instead of alleging facts showing an unconstitutional policy or custom, Plaintiff alleges that his

son was disciplined with harsher consequences than similarly situated students involved in the same incident. *See* Dkt. No. 1, ¶ 64. Isolated incidents will not support a *Monell* claim for municipal liability. *See e.g., Peterson v. City of Fort Worth, Tex.,* 588 F.3d 838, 852 (5th Cir. 2009) (holding that 27 incidents of excessive force between 2002 and 2005 did not suggest a pattern so common to constitute a municipal policy). Finally, because Plaintiff has alleged no unconstitutional facts attributable to the policymaker and no facts showing an unconstitutional policy or practice, it follows that Plaintiff has failed to allege facts demonstrating the requisite causal connection. Plaintiff's Section 1983 claim against PISD should be dismissed.

**F. Plaintiff's claim for punitive damages against PISD must be dismissed.**

19. It is well-established that a plaintiff may not seek punitive damages under Section 1983 from a governmental entity defendant. *See City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 271 (1981) ("[w]e hold that a municipality is immune from punitive damages under 42 U.S.C. §1983."); *see also Jefferson v. City of Tarrant, Ala.,* 522 U.S. 75, 79, 118 S. Ct. 481, 485 (1997) ("But § 1983 plaintiffs may not recover punitive damages against a municipality"); *McMillen v. New Caney Indep. Sch. Dist.,* 939 F.3d 640, 647 n. 1 (5th Cir. 2019) ("But punitive damages are not available against a governmental entity for constitutional violations.") Plaintiff's request for punitive or exemplary damages against PISD should be dismissed with prejudice.

**G. Plaintiff's tort claims must be dismissed.**

20. Plaintiff asserts common law claims for negligent supervision, negligent failure to protect, and negligent infliction of emotional distress. *See* Dkt. No. 1. However, in Texas, sovereign immunity protects the State, its agencies, and its officials from lawsuits for damages. *See Tooke v. City of Mexia* 197 S.W.3d 325, 331 n. 11 (Tex. 2006); *Tex. Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 853-54 (Tex. 2002). The common-law

doctrine of governmental immunity similarly protects political subdivisions of the State, including school districts. *Wichita Falls State Hosp. v. Taylor,* 106 S.W.3d 692, 694 n.3 (Tex. 2003); *see also Harris County v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004).

21. School districts in Texas retain their governmental immunity from all common law claims unless the Texas Legislature has expressly waived immunity in a specific statute. *Gen. Serv. Comm'n v. Little-Tex Insulation Co., Inc.*, 39 S.W.3d 591, 594 (Tex. 2001); *A.W. v. Humble Indep. Sch. Dist.*, 25 F. Supp. 3d 973, 1006 (S.D. Tex. 2014). The Texas Supreme Court has made clear that it is the province of the Legislature to consent to a suit against a governmental entity. *Tex. Nat. Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 853 (Tex. 2002). As a consequence, a party suing a school district under state law must establish consent to suit, "which may be alleged either by reference to a statute or to express legislative permission." *Tex. Dep't. of Transp. v. Jones*, 8 S.W.3d, 636, 638 (Tex. 1999). Absent consent to suit, a trial court lacks subject matter jurisdiction. *Id.*

22. In Texas, governmental entities are immune from tort causes of action, unless specifically waived under the Texas Tort Claims Act ("TTCA"). *See LeLeaux v. Hamshire - Fannett Indep. Sch. Dist.,* 835 S.W.2d 49, 51 (Tex. 1992); TEX. CIV. PRAC. & REM. CODE §101.001, *et seq.* The TTCA does not include a general waiver of immunity, but a limited one, waiving immunity only under specified exceptions. *Dallas County Mental Health & Mental Retardation v. Bossley,* 968 S.W.2d 339, 341 (Tex. 1998).

23. Unlike other local government entities, a school district's immunity is only waived by the TTCA in cases arising from "the use or operation of a motor vehicle." *See* TEX. CIV. PRAC. & REM. CODE §§101.021(1); 101.051 ("Except as to motor vehicles, this chapter does not apply to a school district…"). Thus, there is no waiver of immunity for a tort claim unless the plaintiff's

injuries were proximately caused by the operation or use of a motor-driven vehicle. *Jones v. Houston Indep. Sch. Dist.*, 979 F.2d 1004, 1007 (5th Cir. 1992). Consequently, plaintiffs cannot assert common law claims for negligent supervision and negligent failure to protect. *A.W. v. Humble Indep. Sch. Dist.*, 25 F. Supp. 3d 973, 1006 (S.D. Tex. 2014). Here, there are no facts alleging that Plaintiff's injuries were proximately caused by a motor vehicle; instead, the Complaint asserts that Plaintiff's injuries were caused by other students. Because plaintiffs have neither alleged nor argued that any of the common law claims that they have asserted in this action are claims for which the Texas Legislature has waived PISD's sovereign immunity, Plaintiff's common law state claims must be dismissed.[2]

**H. Negligent infliction of emotional distress is not a cognizable cause of action in Texas.**

24. Plaintiff's claim for negligent infliction of emotional distress fails for the additional, independent reason that Texas law does not recognize the tort it asserts. The Texas Supreme Court has long held that "there is no general duty in Texas not to negligently inflict emotional distress." *Boyles v. Kerr*, 855 S.W.2d 593, 594 (Tex. 1993). A claimant may recover mental anguish damages only in connection with defendant's breach of some other legal duty. *Id*. at 594-95. Federal courts applying Texas law follow this rule and dismiss standalone claims, recognizing that "Texas does not recognize an independent cause of action for negligent

2 To the extent that any of Plaintiff's tort claims are asserted against any of the individual defendants, such claim must be dismissed. A suit against a governmental employee acting within the scope of his or her employment and sued in his or her individual capacity must be dismissed under § 101.106(f). *A.W.*, 25 F. Supp. 3d at 1007 (quoting *Lund v. Giauque,* 416 S.W.3d 122, 124–25 (Tex.App.-Fort Worth, 2013, no pet.). The Texas Tort Claims Act mandates the dismissal of a suit against a governmental employee brought against the employee's official capacity in most circumstances. Because this is a typical case, the election of remedies provision in the Texas Tort Claims Act, section 101.106(e), bars Plaintiff's negligent supervision, negligent failure to protect, and negligent infliction of emotional distress claims against Vickers, Sanchez, and Kosub. Under the Act, "[i]f a suit is filed under this chapter against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit." Tex. Civ. Prac. & Rem. Code § 101.106(e). Here, Plaintiff has filed suit against PISD and its employees. *See* Dkt. No. 1. PISD now seeks immediate dismissal of all state tort claims asserted against Vickers, Sanchez, and Kosub.

infliction of emotional distress." *Garza v. United States*, 881 F. Supp. 1103, 1108 (S.D. Tex. 1995).

25. Plaintiff pleads negligent infliction of emotional distress as a freestanding tort, alleging that L.M.'s emotional-distress damages "flow directly from PISD's independent acts of negligence[.]" *See* Dkt. No. 1, ¶¶ 91-92. Because no such cause of action exists under Texas law, the claim fails regardless of the facts alleged, and the defect is incurable. The claim is separately barred by the District's governmental immunity, which extends to common-law "infliction of emotional distress" claims against a school district. *A.W. v. Humble Indep. Sch. Dist.*, 25 F. Supp. 3d 973, 1006 (S.D. Tex. 2014). Plaintiff's claim for negligent infliction of emotional distress should be dismissed with prejudice.

## V. CONCLUSION AND PRAYER

Defendants move the Court to grant their 12(b)(6) Motion to Dismiss Plaintiff's Original Complaint, dismissing Plaintiff's claims in their entirety and with prejudice.

Respectfully submitted,

WALSH, GALLEGOS, KYLE, ROBINSON &
DE LOS SANTOS, P.C.
1020 NE Loop 410, Suite 450
San Antonio, Texas 78209
Tel No.: (210) 979-6633
Fax No.: (210) 979-7024

By: /s/ Katie E. Payne
KATIE E. PAYNE
State Bar No. 24071347
kpayne@wabsa.com
HANNAH M. CRAMER
State Bar No. 24105174
hcramer@wabsa.com

ATTORNEYS FOR DEFENDANTS

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that on the 16th day of September, 2026, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which caused it to be served upon all counsel of record.

*/s/ Katie E. Payne*
Katie E. Payne